UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINE A. CIMALA,                    Case No. 11-11973

          Plaintiff,                 Julian Abele Cook
v.                                      United States District Judge

COMMISSIONER OF SOCIAL SECURITY,        Michael Hluchaniuk
                                        United States Magistrate Judge
          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 7, 12)**

## I.    PROCEDURAL HISTORY

    A.    Proceedings in this Court

On May 4, 2011, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Julian Abele Cook referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance benefits.  (Dkt. 2).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 7, 12).

    B.    Administrative Proceedings

Plaintiff filed the instant claims on August 7, 2007, alleging that she became

unable to work on May 16, 2006. (Dkt. 5-5, Pg ID 116). The claim was initially disapproved by the Commissioner on September 28, 2007. (Dkt. 5-4, Pg ID 73-76). Plaintiff requested a hearing and on December 16, 2009, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Thomas L. Walters, who considered the case *de novo*. In a decision dated January 28, 2010, the ALJ found that plaintiff was not disabled. (Dkt. 5-2, Pg ID 32-42). Plaintiff requested a review of this decision on February 11, 2010. (Dkt. 5-2, Pg ID 29). The ALJ's decision became the final decision of the Commissioner on March 3, 2011, the Appeals Council denied plaintiff's request for review. (Dkt. 5-2, Pg ID 18-20); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 42 years of age at the time of the most recent administrative hearing. (Dkt. 5-2, Pg ID 40). Plaintiff's relevant work history included approximately 13 years as a paraprofessional, and a retail store manager and team leader. (Dkt. 5-6, Pg ID 144). In denying plaintiff's claims, defendant

Commissioner considered three herniated disks in neck and migraines as possible bases of disability. (Dkt. 5-6, Pg ID 143).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since May 16, 2006. (Dkt. 5-2, Pg ID 37). At step two, the ALJ found that plaintiff's back and neck pain, headaches, and a history of shoulder surgeries were "severe" within the meaning of the second sequential step. *Id*. At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id*. At step four, the ALJ found that plaintiff could not perform her previous work as a para professional and a retail store manager. (Dkt. 5-2, Pg ID 40). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 5-2, Pg ID 41).

B.    Plaintiff's Claims of Error

Plaintiff claims that the VE's response cannot constitute substantial evidence because each element of the hypothetical does not accurately describe plaintiff in all significant, relevant respects apparently because the ALJ did not properly form a complete hypothetical question and did not properly evaluate the entirety of the medical records of evidence. Plaintiff points out that the ALJ opined that because plaintiff "did not seek readily available medical treatment it

was not reflective of an individual who believed [her] problem to be truly
disabling.  This failure to seek treatment for a period of time may be a factor to be
considered against the claimant. Such action is not characteristic of an individual
who believes his problem to be truly disabling.  Furthermore the treatment the
claimant did seek did not reveal work-preclusive symptoms." (Tr. 22).  However,
the ALJ only discusses that "it was not until a third MRI which was taken in
August, 2006 that a left herniation appeared; it was not present in August, 2000 or
April, 2006 MRIs.  This herniation possibly could explain at least some of the left
upper extremities." (Tr. 22).  According to plaintiff, not only would that left sided
disc herniation at C5-6 explain plaintiff's symptoms, but also the positive clinical
examination findings that were not discussed or mentioned in the January 2010
denial.  (Tr. 230-231, 260, 263, 283-285).  According to plaintiff, pertinent
positive findings from the argued amended alleged onset date of July 16, 2007,
which were not discussed or mentioned in the January 2010 denial are as follows:

1.    Muscular instability of both shoulders, left greater than right;

2.    Moderate to severe limitation of cervical extension;

3.    Spurling's maneuver is positive to the left;

4.    Numbness and tingling radiates to digits three and four of the left
      hand;

5.    Shoulder impingement signs are positive on the left;

6.    Moderately positive Tinel's test over the median nerve at the left
      wrist (i.e. carpal tunnel syndrome);

7.    Sensation is reduced to light-touch in digits three and four of the left
      hand;

8.    Sensation is reduced to pinprick in digits two through five of the left
      hand.

(Tr. 284-285). According to plaintiff, the ALJ did not explain what evidence was

considered, what evidence was rejected, and what evidence was ignored, and thus,

this Court cannot perform its required review function. *Brown v. Bowen*, 794 F.2d

703, 708 (D.C. Cir. 1986).

C.    The Commissioner's Motion for Summary Judgment

According to the Commissioner, the bulk of plaintiff's argument concerns

two independent medical evaluations performed in conjunction with her worker's

compensation suit. One was performed by Dr. James Wessinger in January 2007,

while the other was conducted by Dr. Paul LaClair in July of that same year. The

ALJ found that plaintiff was limited to sedentary work with additional limitations,

including no overhead work. (Tr. 21). After considering vocational expert

testimony, the ALJ found that plaintiff could perform such occupations as

addresser, information clerk, call-out operator, and surveillance system monitor

(7,037 jobs in the region). (Tr. 24). Accordingly, she was not disabled.

The Commissioner points out that plaintiff does not rely on any treatment records in support of her argument for reversal and, as the ALJ observed, her lack of treatment is telling.  As even Dr. LaClair acknowledged, epidural steroid injections would be appropriate for plaintiff, but she had declined such treatment in the past.  (Tr. 22).  Plaintiff told Dr. LaClair that she was taking the following medication: 1 or 2 Motrin per day, 1 or 2 Vicodin per day on an as-needed basis, a headache drug, Flexeril, and Excedrin.  (Tr. 284).  In 2009, a record from Dr. John McLaurain suggests plaintiff was taking about one Motrin and one Flexeril per day, but no Vicodin.  (Tr. 287).  Thus, the Commissioner contends that her medication usage was rather conservative and that the ALJ could properly consider plaintiff's failure to seek additional medical treatment in determining that her impairment was not disabling.

The Commissioner also points out that the ALJ observed that both worker's compensation doctors limited plaintiff to sedentary work with restrictions on overhead work, and he accommodated those restrictions.  (Tr. 23).  Indeed, his residual functional capacity was more restrictive than that suggested by the state agency physician, who thought that plaintiff could perform the lifting requirements of sedentary work and the standing/walking requirements of light work.  (Tr. 244).  In the Commissioner's view, as opposed to the dueling independent medical examiners, the state agency physician evaluated all the

evidence in the file as of September 2007, including both worker's compensation reports and he was the most neutral evaluator, given that he was not hired by a litigant in plaintiff's worker's compensation suit.  As the ALJ observed, physical medicine specialist Dr. Christina Richardson also stated in 2006 that Plaintiff could work.  (Tr. 22).  The ALJ remarked that Dr. LaClair's findings were questionable because they suggested a "swift and dramatic decline" when compared to the findings of the first examiner.  (Tr. 23).  He also noted that Dr. LaClair's statement that plaintiff needed to lie down for several hours was unsupported.  (Tr. 22).  And, as noted above, the ALJ could reasonably expect that someone who had to lie down for several hours per day because of upper extremity pain would have been more active in seeking medical care.

The Commissioner points out that while plaintiff includes several paragraphs in her brief on the treating source rule, she fails to indicate who she believes is a treating source.  Dr. LaClair certainly was not; he only examined plaintiff once, examined her for disability evaluation purposes, never provided treatment, and never established a doctor/patient relationship.  And, as set forth above, the ALJ properly explained why he did not credit all of Dr. LaClair's opinion.

While it is not entirely clear from plaintiff's brief, the Commissioner believes that plaintiff argues that she met or equaled Listing 1.04A.  According to

the Commissioner, the former claim can be readily dismissed, as plaintiff does not have the basic finding required by that listing: a compromise of a nerve root or the spinal cord as a whole.  Even on plaintiff's most recent MRI, there is no evidence of nerve root compromise.  Because a claimant must meet every requirement for a listing in order to be disabled, this problem is fatal to her claim. Plaintiff also points to no evidence of neuroanatomical distribution of pain. Rather, her pain appears to be diffuse.  She also lacks any evidence of motor weakness or atrophy.  According to the Commissioner, since both a neuroanatomical distribution of pain and motor weakness are required for Listing 1.04A, their absence additionally dooms plaintiff's argument.

The Commissioner also contends that while plaintiff lists some varied examination findings and suggests that they equal Listing 1.04A, she offers no cohesive rationale explaining why they equal any listing.  A claimant may equal a listing when she has "other findings related to [an] impairment that are at least of equal medical significance to the required criteria."  20 C.F.R. § 404.1526(b)(1)(B)(ii).  The state agency physician was aware of the examination results of Doctors Wessinger and LaClair (Tr. 249), and he did not find that plaintiff met or equaled a listing.  The Commissioner suggests that plaintiff's "list of findings" is simply unconvincing and fails to satisfy her burden.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

    If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed.Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Governing Law</u>

    The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the
Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et
seq*.).  Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled.  F. Bloch,
Federal Disability Law and Practice § 1.1 (1984).  While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

The Commissioner asserts that plaintiff failed to meet her burden that she

met or equaled the Listing.  It is true that it is plaintiff's burden to show that she

met or equaled a Listing.  *See Bowen v. Yuckert*, 482 U.S. 137, 147 n. 5 (1987).

However, it is the ALJ's obligation at step 3 to determine whether plaintiff met or

medically equaled the listing.  The ALJ concluded that "[t]he medical evidence

indicates that the claimant's impairments are 'severe' with the meaning of the

Regulations, but they are not 'severe' enough to meet or medically equal either

singly or in combination Listing l.04 or any other impairments listed in Appendix

1, Subpart P, Regulations No. 4." (Tr. 20).  This is precisely the type of

perfunctory analysis that the Sixth Circuit recently rejected as insufficient in

*Reynolds v. Comm'r of Soc. Sec.*, 424 Fed.Appx. 411, 415 (6th Cir. 2011).  In

*Reynolds*, the ALJ did not analyze whether the plaintiff's physical impairments

met or equaled a listing after summarizing the medical evidence and concluding

that the plaintiff's physical impairments were "severe."  Thus, plaintiff's point

about the ALJ failing to discuss certain evidence is well-taken under these

circumstances.  The evidence plaintiff points to is that which her counsel argued

supported a listing level impairment at the hearing.  This case is very similar to

*Tresenrider v. Comm'r of Soc. Sec.*, 2012 WL 2412113,*5 (N.D. Ohio 2012).  In

that case, the plaintiff's counsel informed the ALJ that the plaintiff believed that he

met or equaled Listing 1.07 or 1.08.  The plaintiff also presented testimony and

medical evidence in support of his contention.  Thus, the Court concluded that the

plaintiff satisfied his burden.  However, the Court also concluded that the ALJ

failed to satisfy his responsibility by explaining why the evidence presented by plaintiff did not establish that his impairments were at listing level. *Id*. The Court also rejected the Commissioner's position that only "[m]inimal articulation is required at step three," because "minimal articulation is not synonymous with no articulation." *Id*. While the Commissioner now conducts an extensive analysis of the medical records explaining why plaintiff fails to meet the listing, that merely illustrates the very problem - the ALJ should have conducted such an analysis. Because the ALJ failed to properly articulate why plaintiff's impairments did not meet or equal the listing, this matter should be remanded so that analysis can be undertaken.

The undersigned is, however, perplexed by plaintiff's treating physician argument. She identifies no treating physician opinions that she claims the ALJ did not accord appropriate weight. The undersigned agrees with the Commissioner that Dr. LaClair is not a treating physician, although it is not entirely clear that that is even plaintiff's claim.

The ALJ rejected some of the limitations imposed by Dr. LaClair (the need to lie down), based in large part on the ALJ's observation that plaintiff's treatment was very conservative and that she refused many of the suggested treatment options offered. However, SSA guidance provides that the adjudicator must not draw any inferences about an individual's symptoms and their functional effects

from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. In conducting this analysis, the adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996). There is no explanation in the record for plaintiff's refusal and plaintiff was not questioned about this at the hearing. While such an error is not always reversible error, *see McClain v. Comm'r of Soc. Sec.*, 2011 WL 4599611 (E.D. Mich. 2011), given that this matter must be remanded for other reasons, the ALJ should also explore the reasons that plaintiff refused certain treatment.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 15, 2012                              s/Michael Hluchaniuk
                                                   Michael Hluchaniuk
                                                   United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

      I certify that on <u>August 15, 2012</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Richard J. Doud, William L. Woodard, AUSA, and the Commissioner of Social Security</u>.

<div style="margin-left:40%">

s/Darlene Chubb_____
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov

</div>